**20SL-CC05896**

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

## IN THE CIRCUIT COURT FOR ST. LOUIS COUNTY
## STATE OF MISSOURI

| | |
|---|---|
| **MELANIE HEIDGER,** *individually and on behalf of all others similarly situated,* | Case No. _____ |
| **Plaintiffs,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **COLGATE-PALMOLIVE COMPANY,** *and* **DOES 1 through 10,** | |
| **Defendants.** | |

### CLASS ACTION PETITION

Plaintiff Melanie Heidger, individually and on behalf of all others similarly situated, hereby files this, her Class Action Petition, against Defendant Colgate-Palmolive Company and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products constituting, on a nationwide basis, breach of warranty and unjust enrichment, and, in the state of Missouri, violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

## I.  INTRODUCTION

1.      Defendant Colgate-Palmolive Company ("Colgate") markets and sells many different consumer products, including deodorant and antiperspirant sticks.  One such product is "Lady Speed Stick"-branded, "Stain Guard" antiperspirant.

2.      The "Stain Guard" line of products is deceptively and misleadingly marketed as being a product that "fights yellow stains" and "fights white marks," and as being "formulated to fight yellow stains and white residue on clothes."

3.      However, despite those claims, the "Stain Guard" line of antiperspirants actually *causes* and *creates* the "yellow stains" and "white marks" that it claims to "fight."

1

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

4.      Not only is that fact obvious and apparent from using the product, but it is a scientific fact that "white marks" and "yellow stains" are *caused by* and *created by* the product's primary active ingredient, Aluminum Zirconium Tetrachlorohydrex GLY ("Aluminum").

5.      Notably, because it is scientifically well-established (although not well-known to the consuming public) that aluminum in some antiperspirants causes white marks and staining, there are other brands of "antiperspirants" on the market that do not contain aluminum and therefore can *legitimately* claim to "fight white marks" and/or to "fight" "yellow stains."[1] Moreover, other brands make effective "anti-stain" versions of aluminum-containing antiperspirants generally featuring formulations radically different from their "regular" product.[2] The "Stain Guard" antiperspirant, despite posing as such, is no such product. The product does absolutely nothing to "fight," decrease, lessen or reduce yellow stains; and, on the whole, the product certainly does not attempt to prevent white marks or yellow stains – rather, it *creates and causes* them.

6.      The fact that *legitimate* stain and white-mark preventing antiperspirants exist on the market renders Colgate's deception all the more convincing to consumers; a consumer does not simply take for granted that all antiperspirants cause white marks and yellow stains. Rather a consumer has reason to believe that the "Stain Guard" antiperspirant categorically *does not cause* white marks or yellow stains – that it "fights" those conditions, *not* that it simply creates those conditions to a lesser extent than "normal" antiperspirants.

7.      Yet, in reality, the "Stain Guard" antiperspirant actually *causes* the very problems Colgate deceptively claim it "fights" against. Even if the product actually causes or results in "fewer" or "less" white marks and yellow stains than other brands or other products (*which is not apparent*), the fact the product causes or results in such white marks and stains *at all* makes its claims false and

---

[1] These brands include peptide-based products such as Klima Hyper-Dri Antiperspirant Serum and Perspi-Guard Maximum Strength Antiperspirant.
[2] Right Guard Xtreme Defense Antiperspirant Deodorant is one such product.

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

misleading.

8.      In any event, importantly, nowhere on the product are there any indications that the product prevents or "fights" yellow stains and/or white marks *in comparison to "regular" antiperspirants*. Rather, the product simply and unqualifiedly claims to "fight" problems and conditions it, in reality, causes and creates.[3]

9.      In short, while "Stain Guard" antiperspirant is deceptively marketed as "fighting" (and/or "guarding" against) white marks and yellow stains, it causes the very problems it claims to solve, demonstrably creating and causing both white marks and yellow stains on a variety of clothing.

10.      Despite all this, Colgate sells the product to the buying public, misleading and deceiving consumers into paying for an inferior product while under the false impression that it has benefits that it does not contain.

11.      Pursuant to the MMPA, such practice is illegal.

12.      In addition and/or in the alternative to the above, since the initial offering of the Product, each and every container of the Product has borne a uniformly-worded label falsely claiming the Product "Fights Yellow Stains And White Marks." Those uniformly-worded false statements give rise to additional and/or alternative claims on behalf of a nationwide class of similarly-situated consumers.

## II.     PARTIES, JURISDICTION, AND VENUE

13.      Plaintiff Melanie Heidger is a citizen and resident of St. Louis County, Missouri.

14.      Plaintiff brings this Class Action Petition individually and on behalf of a putative nationwide class of all United States consumers and, additionally or alternatively, a putative class of Missouri residents.

---

[3] This renders Defendant's claims undeniably false. Another example of a *legitimate* "stain fighting" product on the market that consumers are familiar with is laundry detergent, which obviously does not cause stains to some lesser extent.  No consumer reasonably believes a product will *cause* a condition it claims to "fight."

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

15.     Defendant Colgate-Palmolive Company ("Colgate") is a Delaware corporation having its principal place of business at 300 Park Avenue, New York, NY 10022. Colgate may be served at: CT Corporation System, 120 South Central Ave., Clayton MO 63105.

16.     Defendant Colgate advertises, distributes, markets and sells "Lady Speed Stick"-branded, "Stain Guard" antiperspirant.

17.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

18.     Venue is proper in this Court because Plaintiff resides in, and was injured in this venue.

19.     This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA.  Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable.  This action raises questions of law and fact common among Plaintiffs.  The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

20.     Class and Subclass definition:  Plaintiff Melanie Heidger brings this action on behalf of herself and a class of similarly-situated persons preliminarily-[4] defined as follows: All persons who purchased "Lady Speed Stick"-branded, "Stain Guard" antiperspirant (the "Product")[5] during the Class Period in the United States.  In addition, and/or alternatively, Plaintiff Melanie Heidger brings this action on behalf of herself and a Missouri subclass of similarly-situated persons defined as follows: All

[4] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.
[5] As that term and label is defined in greater detail *infra*.

4

Electronically Filed - St. Louis County - December 02, 2020 - 11:21 PM

persons, who, within the Class Period, purchased the Product in the State of Missouri. The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition. Excluded from the Class and Subclass are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

21.     Numerosity:  Upon information and belief, the Class and Subclass includes tens of thousands, if not hundreds of thousands, of individuals on a statewide basis, making their individual joinder impracticable. Although the exact number of Class and Subclass members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

22.     Typicality: Plaintiff's claims are typical of those of the Class and Subclass because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Product to Plaintiffs.

23.     Adequacy:  Plaintiff Melanie Heidger is an adequate representative of the Class and/or Subclass because her interests do not conflict with the interests of the Class or Subclass members she seeks to represent, she has retained competent and experienced counsel, and she intends to prosecute this action vigorously. The interests of the Class and Subclass will be protected fairly and adequately by Plaintiff and her counsel.

5

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

24.     Commonality:  Common questions of law and fact exist as to all Class and Subclass members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Product; (b) whether and to what extent the Class and Subclass members were injured by Defendant's illegal conduct; (c) whether the Class and Subclass members are entitled to compensatory damages; (d) whether the Class and Subclass members are entitled to punitive damages; (e) whether the Class and Subclass members are entitled to declaratory relief; and (f) whether the Class and Subclass members are entitled to injunctive relief.

25.     Superiority:  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual Class and Subclass members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct.  Thus, it would be extremely difficult for the individual Class and Subclass members to obtain effective relief.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

## III.    BACKGROUND

26.     Defendant manufactures, distributes, and/or sells the product at issue herein, "Lady Speed Stick"-branded, "Stain Guard" antiperspirant.

27.     Defendant Colgate, in particular, owns the "Lady Speed Stick" brand and, under that brand name, manufactures and distributes, *inter alia,* "Stain Guard" antiperspirant.

28.     The "Stain Guard" line of products is marketed as having the ability to "fight yellow stains" and to "fight white marks" on a user's clothing, purportedly being "formulated to fight yellow

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

stains and white residue on clothes."[6]

29.     The "Stain Guard" line of antiperspirants comes in a few different varieties and scents, all of which have the same ingredients and are substantially similar enough to be considered collectively in this lawsuit; accordingly, all scents and varieties of the "Lady Speed Stick," "Stain Guard" line are collectively referred to hereinafter as the "Product."

30.     The packaging of the Product makes at least two false claims, appearing as follows:



a.

31.     As shown, the "Stain Guard" line is marketed as being a product that "Fights yellow stains and white marks."

32.     However, the active ingredient in the Product is Aluminum Zirconium Tetrachlorohydrex GLY. Although not commonly known by the consuming public, it has long been recognized by

---

[6] https://www.ladyspeedstick.com/en-us/products/stainguard-daringly-fresh

7

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

scientists, and is a well-accepted scientific fact, that "yellow stains" and "white marks" on clothing are *caused,* at least indirectly, by aluminum in certain antiperspirants (as to yellow stains, they are caused generally upon aluminum being mixed with a user's perspiration).

33.    Even worse, when used by Plaintiff and, upon information and belief, all consumers, the Product undeniably leaves white marks on clothing of multiple colors.

34.    It is irrefutable that the Product will inevitably lead and contribute to more staining and white marks on clothing than when it is not used at all.

35.    Importantly, nowhere on the product are there any indications that the product "fights" 'yellow stains' or "white marks," *in comparison to "regular" deodorant or antiperspirant brands.* Rather, the product simply and unqualifiedly claims to "fight" and prevent problems and conditions it, in reality, causes. This fact strongly indicates that Defendant knows or should have known that the Product does not, in fact, "fight" stains or white marks.

36.    Regardless of the extent, the Product causes, at least indirectly, the exact condition – "staining" and/or "white marks" – that it purports to "fight."

37.    Moreover, adding another layer to Defendant's deceptive marketing of the Product, the only material difference between the Product and "Lady Speed Stick's" non-"Stain Guard" line is that the active ingredient, Aluminum Zirconium Tetrachlorohydrex GLY, is diluted from approximately 16% (in the non-"Stain Guard" line) to 10% in the Product.

38.    Such dilution of an active ingredient does not allow the Product to "fight" stains or white marks.

39.    Such dilution of an active ingredient does not add allow the Product to "fight" stains or white marks. Diluting the active ingredient does not add any benefit and does not change the fact that the Product actually *causes* conditions it claims to fight. If anything, dilution of the active ingredient simply renders the Product less effective than its "normal" counterpart.

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

40.    And that deceptive fact is ***in addition to*** the worse reality that the Product causes what it falsely claims to "fight" against -- white marks; upon being used by the Plaintiff, the Product readily created white marks upon clothing of all colors; because it contains aluminum, when mixed with a user's sweat, it also will inevitably cause yellow staining as well.  Plaintiff, after using the Product herself, noticed both white marks and yellow-stains on her clothing.

41.    Defendant's "fights yellow stains" and/or "fights white marks" and/or "formulated to fight yellow stains and white residue on clothes" claims are patently false.

42.    A normal consumer is unable to determine simply by reading the claims on the Product packaging and/or the Product's ingredient list that it actually contains no ingredients allowing it to "fight" against, or otherwise prevent white marks and yellow stains.

43.    While the fact is well-established scientifically, a normal consumer also is unaware that Aluminum Zirconium Tetrachlorohydrex GLY is a key factor (along with a person's perspiration) that contributes to and, at least indirectly, *causes* the "yellow stains" and "white marks" the Product purports to "fight."

44.    Moreover, while the Product very obviously leaves "white marks" on clothing, a potential purchaser is unable to test that fact prior to purchasing the Product.

45.    Upon information and belief, Defendant Colgate profits from the wide-spread practice of selling a diluted version of its regular product for a higher price than its non-diluted versions.

46.    Upon information and belief, Defendant Colgate deceptively and misleadingly markets the Product as falsely "fighting" white marks and yellow stains to convince consumers to purchase a product that does not have the benefits it purports to have.

47.    Defendant's marketing and selling of the Product by use of the aforementioned false, deceptive, and misleading statements is illegal and prohibited under the MMPA.

9

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

*Allegations Relating Specifically to Claims of the Nationwide Class*

48.     As noted, *supra,* since the initial offering of the Product, each and every container of the Product has borne a uniformly-worded label falsely claiming the Product "Fights Yellow Stains and White Marks." (hereinafter "False Claims").

49.     In reality, that statement is inherently false; scientific evidence proves that the Product, by its very chemical and ingredient-based makeup, does not, and cannot "fight" stains, it causes them.

50.     Moreover, usage of the Product reveals the falsity of the False Claims; not only does the Product readily leave white marks and stains on multiple colors of clothing, when transferred to clothing from a user's body and mixed with perspiration, over time, the Product also creates yellow stains on clothing; in fact, as noted, the aluminum contained in the Product is the exact culprit that *causes* stains; in no sense of the word can the Product truthfully be claimed to "fight" stains.

51.     Importantly, nowhere on the product are there any indications that the product "fights" white marks or yellow stains *in comparison to "regular" deodorant or antiperspirant brands.* Rather, the product simply and unqualifiedly claims to "fight" problems and conditions it, in reality, causes.

52.     Defendant, as developer, manufacturer, and exclusive seller and distributor of the Product, has been aware since the Product's inception, that the False Claims are in fact false – that the Product leaves white marks and causes yellow stains.

53.     Indeed, Defendant undoubtedly did its own testing of the Product prior to it being offered for sale and, of necessity, such testing would have made Defendant aware that the Product causes white marks and yellow staining; Defendant should have been well-aware that the Product's chemical and ingredient-based make-up is such that the Product causes white marks and yellow stains.

54.     Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing a product that "fights" yellow stains and white marks rather than, in reality, cause them.

10

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

55.     Plaintiff and the class members purchased the Product with no reason to suspect or know that the Product actually causes white marks and yellow stains.

56.     Defendant possessed specialized knowledge regarding the data and information concerning the chemical formula of the Product and whether the Product would, in fact, cause yellow staining when combined with a user's perspiration.

57.     In fact, in regard to the aspect of the False Claims relating to yellow staining, the Product is a credence good because its purported "fights yellow stains …" benefit cannot be independently assessed or verified by the consumer at the time of purchase.

58.     In purchasing the Product, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the False Claims as accurate.

59.     Had Plaintiffs known that the False Claims were false, Plaintiffs would not have purchased the Product or would not have paid as much for the Product.

60.     As the direct and proximate result of the False Claims, Plaintiff and the class members have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant.

61.     By marketing, selling and distributing the Product to purchasers in Missouri and throughout the United States, Defendant made actionable statements that the Product "Fights Yellow Stains and White Marks" and at all times failed to disclose that the Product did in fact cause and/or contribute to white marks and yellow stains.

62.     Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

63.     Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made.

11

Electronically Filed - St. Louis County - December 02, 2020 - 11:21 PM

64.    As the distributor, marketer, producer, manufacturer, and seller of the Product, Defendant possessed specialized knowledge regarding the data and information concerning the chemical formula of the Product which the Plaintiff and the class members could not and did not review.

65.    All of Plaintiffs' claims are based on misleading statements that violate FDA regulations. Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

66.    Further, Plaintiffs' claims arise, *inter alia,* from "front of the box" statements and symbols which are not regulated by the Nutrition Labeling and Education Act.

*Facts Particular to Melanie Heidger and Representative of the Proposed Class*

67.    In or around October of 2020, while in St. Louis, Missouri, Plaintiff purchased the product from a retailer.

68.    Due to the claims on the packaging, Plaintiff falsely believed she was purchasing a product having the ability to "fight" against white marks and yellow stains; Plaintiff believed the Product would "fight," as opposed to cause, "white marks" and "yellow stains."

69.    Plaintiff thereafter purchased the Product. She purchased the Product primarily for her personal, family and household use. Plaintiff later did personally use the product – and was disappointed in its effects – as described herein.

70.    At the time she purchased the Product, Plaintiff was unaware of the falsity of the Product's claims and/or the falsity of Defendant's online claims regarding the Product.

71.    She discovered that such claims were false shortly after purchasing the Product, seeing that it created, *inter alia,* white marks on her clothing. Later, she noticed that yellow stains were also developing in the clothing she wore while using the Product.

72.    If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, she would not have bought the Product.

12

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

73.     When Plaintiff purchased the Product, she was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

74.     Specifically, Plaintiff suffered an ascertainable loss because she did not receive the expected benefit of her bargain.

75.     When Plaintiff was purchasing the Product, due to the false claims upon the Product, Plaintiff believed that she was receiving a product that would "fight" white marks and yellow stains, and/or did something to decrease, lessen and/or reduce stains and/or white marks. The Product did not do what Plaintiff bargained for; the product does absolutely nothing to "fight," decrease, lessen or reduce yellow stains; and, on the whole, the product certainly does not attempt to prevent white marks or yellow stains – rather, it *creates and causes* them.

76.     Especially in light of the fact that comparable products that *legitimately* reduce or eliminate white marks and yellow stains exist on the mark, Plaintiff specifically did *not* bargain for a Product that merely created and/or resulted in "fewer" or "reduced" white marks and stains compared to more heavily-staining or marking products (which was not, in any event, apparent with the Product); Plaintiff expected to receive a Product that did **not** *cause* and *create* white marks and stains at all.

77.     The Product was not at all what it was purported to be. Plaintiff did not receive the value of what she bargained for; instead Plaintiff received a product that unremarkably caused white marks and yellow stains on her clothing.

78.     Consequently, Plaintiff was damaged in the amount of the difference between the value of the Product as represented – as one that would "fight" white marks and yellow stains (such value is approximately what Plaintiff paid), and the actual value of the product as received – because Plaintiff did not want a product that *caused* white marks and yellow stains on her clothing, the actual value to Plaintiff was nothing. Thus, Plaintiff was damaged in the full amount paid for the Product.

79.     Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed

13

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

Class and Subclass, all that is relevant is that Plaintiff and the class members, United States and Missouri citizens, purchased the Product at a time within the Class Period while in the United States and/or Missouri.

## CAUSES OF ACTION

## COUNTS RELATING TO THE NATIONWIDE CLASS[7]

## COUNT ONE: BREACH OF WARRANTY

80.     Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this First Amended Petition.

81.     Defendant sold the Product in its regular course of business.  Plaintiff and the class members purchased the Product.

82.     Defendant made promises and representations in an express warranty provided to all consumers, namely the False Claims -- that the Product "fights yellow stains and white marks."

83.     The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member.

84.     Defendant gave these express warranties to Plaintiff and each class member in written form on the labels of the Product.

85.     Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

86.     Defendant breached the warranty because the False Claims were false – the Product in fact causes white marks and yellow stains.

---

[7] Plaintiffs' Nationwide Class Claims – Counts One and Two – are based upon the laws of each of the fifty states applied to each putative nationwide-class-member based upon where the underlying transactions took place. Although the laws of the fifty states for the claims brought in the Nationwide Class Claims are materially-similar, Plaintiff reserves the right, and intends, to duly conduct and present to the Court an individualized choice-of-law analysis for each state as part of the class certification process.  Presenting such an analysis as part of this Complaint is unconventional, unnecessary and premature.

Electronically Filed - St. Louis County - December 02, 2020 - 11:21 PM

87.     The False Claims were false when the sales took place and were undiscoverable to Plaintiff and the class members at the time of purchase.

88.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the Product.

89.     Defendants had actual notice of the false labeling information and to date have taken no action to remedy their breaches of express warranty.

90.     Between November 18-20, 2020, Plaintiff Heidger, through counsel, sent actual, written notice of Defendants' breach of warranty by way of multiple letters to Defendant Colgate-Palmolive Company.

91.     Defendant previously knew or should have known of the falsity of the False Claims on the Product due to, *inter alia*, Defendant's testing and use of the Product.

92.     Defendant has nonetheless refused to remedy such breaches.

93.     By placing the Product in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiff and the class members that the Products were accurately labeled in conformance with the law.

94.     Defendant's breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the product as promised and the value of the product as delivered.

95.     As a result of Defendant's breach of these warranties, Plaintiff and class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other

15

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

relied as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

## COUNT TWO: UNJUST ENRICHMENT

96.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

97.     Plaintiffs plead their claim for relief in the alternative to the contract claims set forth above.

98.     Plaintiff and the class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willfully accepted and enjoyed those benefits.

99.     Defendant either knew or should have known that the payments rendered by Plaintiff and the class members were given and received with the expectation that the Product would be as represented and warranted.    For Defendant to retain the benefit of the payments under these circumstances is inequitable.

100.    Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Products, including the False Claims, Defendant reaped benefits, which result in Defendant wrongfully receiving profits.

101.    Equity demands disgorgement of Defendant's ill-gotten gains.    Defendant will be unjustly enriched unless Defendant is ordered to disgorge those profits for the benefit of Plaintiff and the class members.

102.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the class members are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

## COUNTS RELATING TO THE MISSOURI SUBCLASS

### COUNT FOUR: VIOLATION OF THE MMPA – Misleading, False, and Deceptive Marketing

103.    Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Petition, as though fully set forth herein.

104.    Defendant's acts complained of herein occurred in and emanated from the State of Missouri.

105.    Plaintiff and all members of the Class are "persons" and the Product is "merchandise" as those terms are defined under the MMPA.

106.    As set out in this Petition, Defendant's marketing of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), in particular, Defendant marketed the Product by falsely claiming it "fights" white marks and yellow stains and/or was "formulated to fight yellow stains and white residue on clothes." The product does absolutely nothing to "fight," decrease, lessen or reduce yellow stains; and, on the whole, the product certainly does not attempt to prevent white marks or yellow stains – rather, it *creates and causes* them.

107.    As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing contained the claimed benefits and that it was capable of preventing conditions it actually contributes to and indirectly and directly causes.

108.    Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA. In particular, Plaintiff and the class paid for a Product that did not, in fact, contain the benefits claimed and did not, in fact, "fight" the conditions Defendant purports it did; the Product actually causes staining.

109.    Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds

17

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

improperly obtained by Defendant.

110.    In addition, Defendant's conduct as aforesaid was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and others similarly situated and, therefore, warrants the imposition of punitive damages.

111.    Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

**COUNT FIVE: INJUNCTIVE RELIEF**

112.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

113.    Defendant continues to retain payment made by Plaintiff and other members of the Class for the Product that is the result of Defendant's deceptive and misleading marketing in violation of the MMPA.

114.    Applicable law, including R.S. Mo. § 407.025, permits the Court to enter injunctive relief to prevent Defendant's continued violation of the law by continuing to falsely state that the Product "fights" white marks and/or yellow staining.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order certifying this action as a Nationwide class action, along with a Missouri subclass, and appointing Plaintiff Jamie Richards as Class and Subclass representative and her counsel as class counsel. Plaintiff requests that this court find that the Defendant is liable pursuant to the aforementioned nationwide claims; and/or violated the MMPA, and award Plaintiffs compensatory damages, restitution, attorneys' fees, punitive damages (subject to a showing of evidence supporting the same), costs, injunctive relief due to the fact that class members may be continuing to purchase the Product without being aware of the False Claims, and such further relief as the Court deems just.

18

Electronically Filed - St Louis County - December 02, 2020 - 11:21 PM

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*

19